In re Arthur Le Jean MARSHALL and
Hattie Jane Marshall, Debtors.

Arthur L. MARSHALL, Plaintiff,

v.

MICHIGAN DEPARTMENT OF
AGRICULTURE, Defendant.
(Two Cases)

Bankruptcy No. SK89–02377.
Adv. Nos. 89–0234, 89–0235.

United States District Court,
W.D. Michigan, S.D.

July 10, 1990.

---

ORDER OF REMAND

BENJAMIN F. GIBSON, District
Judge.

Presently pending before the Court are
objections by plaintiff Arthur L. Marshall
to the Report and Recommendation dated
January 12, 1990, filed by United States
Bankruptcy Court for this district regard-
ing motions to abstain in accordance with
Title 28 United States Code Section 1334(c)
and to remand in accordance with Title 28
United States Code Section 1452(b) and
Bankruptcy Rule 9027(e). The Court has
given new consideration and has made a *de
novo* determination of those portions to
which objection has been made pursuant to
Bankruptcy Rules 5011(b) and 9033(c).

Having reviewed the record, file, plead-
ings, motions, report and recommendation,

and objections thereto, IT IS HEREBY ORDERED that the January 12, 1990 Report and Recommendation of the Bankruptcy Court is approved and adopted as the Opinion of the Court.

IT IS FURTHER ORDERED that the cases of *Arthur L. Marshall v. Michigan Department of Agriculture*, Case No. 87–11166 CM and *Arthur L. Marshall v. Michigan Department of Agriculture*, Case No. 87–11167 CM are REMANDED to the State of Michigan Court of Claims, in accordance with Title 28 United States Code Section 1452(b) and Bankruptcy Rule 9027(e).

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION TO THE DISTRICT COURT OF MOTION FOR MANDATORY ABSTENTION, DISCRETIONARY ABSTENTION AND/OR REMAND OF ADVERSARY PROCEEDINGS

JO ANN C. STEVENSON, Bankruptcy Judge.

This matter comes before this court upon the State of Michigan, Department of Agriculture's ("MDA") motion to abstain or remand two related state court suits. Both cases were started prepetition by Debtor Arthur LeJean Marshall ("Marshall") against the MDA in the Michigan Court of Claims and subsequently removed by Marshall to this court. Pursuant to 28 U.S.C. Sections 157 and 1334 and the July 23, 1984 order of reference of bankruptcy cases and proceedings entered by the district court, this court has jurisdiction to initially evaluate the grounds for abstention and remand in accordance with Bankruptcy Rules 5011(b) and 9027(e). Having examined counsels' briefs, reflected upon the arguments presented at the December 11, 1989 hearing, and researched the relevant case law, this court concludes that mandatory abstention and remand authorized under 28 U.S.C. Sections 1334(c)(2) and 1452(b), respectively, are required. Therefore, this court respectfully recommends that the district court, after appropriate review of this Report and Recommendation and any objections timely filed by either party under Bankruptcy Rule 9033, adopt this Report and Recommendation to Abstain and Remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Marshall, together with his wife and three sons, operated a 700 acre farm in Allen, Michigan where they raised pure bred suffolk sheep for many years until 1986. As such they maintained one of the largest suffolk sheep flocks in North America.

Marshall alleges that he owned approximately half of the sheep with the balance owned by his sons Thomas, Bartley and David. The MDA disputes this, claiming that the sons owned no sheep.

In February, 1986 Marshall advised the MDA that he suspected that his flock of sheep was infected with "scrapie," a highly contagious viral disease. The MDA, presumably acting pursuant to Act 181 of Public Act 1974 as amended, quarantined Marshall's entire flock in April of 1986. Several months later the MDA proceeded to appraise the "bloodline sheep", which were then euthanized in August and September of 1986. The MDA determined the bloodline sheep had a value of $952,450.00. But for the subsequent dispute, this sum would have been paid by the MDA to Marshall less any federal indemnities that were available.

The "non-bloodline" animals were also infected with scrapie and continued to die. Subsequently, at the request of Marshall's counsel, representatives of the MDA, Marshall, and his counsel had a meeting in Lansing at which the provisions of Public Act 181 were reviewed.

Shortly thereafter, on November 12, 1986, Marshall and the MDA entered into a formal agreement which provided that the MDA would immediately have the balance of the sheep euthanized. Pursuant to the agreement's formula, Marshall was to be compensated up to an amount not to exceed $1,067,000.00. The remaining sheep were destroyed pursuant to that agreement.

The MDA failed to pay the Marshalls anything.

Pursuant to the Michigan Court of Claims Act M.C.L. § 600.6401 et seq., M.S.A. § 227a.6401 et seq., Marshall filed two actions in the Court of Claims in April, 1987. Action 11166, assigned to the Honorable Michael G. Harrison, was brought pursuant to the November 12, 1986 agreement. The second suit, No. 11167 initially assigned to the Honorable Robert Holmes Bell and then reassigned to the Honorable Lawrence M. Glazer, alleged that the MDA had failed to do certain things required by Public Act 181 and that Marshall was damaged as a result of that noncompliance. Although the parties cannot seem to agree on the characterization of the second suit, it appears to be one based in tort.

The MDA did not file answers to either case 11166 or 11167.

On June 11, 1987 the MDA and Marshall entered into a consent judgment in favor of Marshall in the amount of $1,047,200.00, plus costs in the 11166 action. On that same day, the MDA and Marshall also entered into a consent judgment in favor of Marshall in the amount of $952,450.00 plus costs in the 11167 action.

After the parties signed the consent judgments, the attorney general's office received a tip that Marshall had attempted to defraud the MDA on his scrapie claims. As a result a flurry of motions then ensued in attempts to either compel payment pursuant to the consent judgments or to set the judgments aside and avoid payment.

In case 11166, on or about November 13, 1987, Marshall filed a motion for order to compel payment, MDA answered, and, following a hearing, Judge Harrison signed an order compelling the MDA to make payment on December 9, 1987. On December 16, 1987, the MDA filed its motions for rehearing or reconsideration of order, to alter or amend judgment by holding execution in abeyance for 90 days, and for stay of execution pending disposition. Marshall answered and following a hearing on February 16, 1988 Judge Harrison ordered the MDA to pay the judgment amount into escrow. Those funds were to be released to Marshall unless prior to February 29, 1988 the MDA filed a detailed motion to set aside the judgment.

The MDA timely filed its motion and an evidentiary hearing was scheduled to begin on July 7, 1988. The evidentiary hearing took place over eight days—July 7, 8, 11, 12, 21, 22, and August 1, 1988. (Although these dates do not total eight, both parties agreed that in fact the evidentiary hearing took eight days.) During this period Judge Harrison heard the testimony of a large number of witnesses, thirty-three according to the MDA, reviewed at least four depositions, and received sixty-two exhibits into evidence. Closing arguments were heard on October 21, 1988 with the matter being taken under advisement. Judge Harrison issued his oral opinion on January 25, 1989 followed by his written order on March 8, 1989. Judge Harrison made the following findings in setting aside the previously entered consent judgment:

The Court finds, however, that there were imports into the state of sheep known to Mr. Marshall to be infected with scrapies [sic]; specifically it is the finding of this Court that Mr. Marshall was aware of the Laycock quarantine even when sheep were exchanged in 1984.

... I just do not find any of his [Marshall's] testimony as to the artifical [sic] insemination, with the exception of the very limited amount which was done with the, I guess, the veterinarian to have been truthful. And when one finds testimony to be called into question in a limited area, it often calls into question all of the testimony of that individual.

On a second important area, the Court is of the opinion that Mr. Marshall should have been well aware of the existence of scrapies [sic] in the, at least at a minimum, in the fall of 1985. The court is satisfied from the testimony presented that there were sufficient deaths occurring in the Fall to have alerted any person who has the substantial knowledge that Mr. Marshall does of the sheep industry that there was something seriously wrong and that any reasonable person

would have believed that there was a substantial likelihood of scrapies [sic] or something very serious wrong with the flock.

... I think there's very good reason to believe that some sheep were transferred out during the course of these proceedings, and I'm not satisfied that ... the infection could not have been seriously limited had the introduction not been made of the Laycock sheep.

... Whatever the count [of the sheep subject to the reimbursement claim] was, the Court is satisfied that the other factors had an effect on the contract entered into by the State and that the State has met its burden as far as what is necessary to set aside the judgment which was entered into pursuant to that contract.

Judge Harrison's Order also stated that the Defendant (MDA) through the introduction of clear and convincing evidence, has met the necessary burden of proof to warrant the entry of an order for the reasons stated in the record, relieving it from the June 11, 1987 final judgment entered herein.

That Order further provided that the previously escrowed funds of $1,047,200.00 were to be returned to the state.

The parties agree that although the issue was Marshall's fraud, Judge Harrison did not use that word in his findings or in his March 8, 1989 order. The MDA asserts that while the word "fraud" was used in neither his findings nor his order, it is clear that the order setting aside the previously entered into consent judgment was necessarily based on the court having made such a determination.

Following the entry of the March 8 order, the matter was set for a May 15, 1989 trial.

On March 29, 1989, the MDA filed its answer to Marshall's complaint. That answer was further amended on April 11, 1989 at which time the MDA filed its counter-claim seeking $46,536.28. Count I sought $43,791.28 in scrapie indemnification payments already paid by the MDA to other Michigan sheep farmers for scrapie

infected sheep which Marshall allegedly unlawfully knowingly transported to other farmers. Count II sought reimbursement of euthanasia and eradication costs of $2,745.00 incurred by the MDA in disposing of Marshall's infected flock.

Marshall answered the counterclaim, and, at the parties' request, Judge Harrison set trial for July 17, 1989. The parties filed witness lists with the court on June 16, 1989, and, although a trial date later than July 17, 1989 was requested at the June 16, 1989 pretrial, Judge Harrison indicated that trial would proceed on July 17 as scheduled.

*Activities In Case No. 11167*

The record indicates that duplicate motions to those filed in 11166 were filed before Judge Glazer in case 11167. The most recent order in the 11167 file is Judge Glazer's January 7, 1988 order granting Marshall's motion to compel payment unless the MDA filed an appropriate motion with affidavits prior to that date. That order further provided that the MDA was to pay Marshall the consent judgment amount on February 28, 1988 unless it had filed affidavits in support of its motion to set aside consent judgment by that date. If the MDA did not provide appropriate affidavits, payment of the consent judgment would be compelled.

The MDA timely filed its affidavits in support of its motion, and on August 30, 1988 Judge Glazer took under advisement the MDA's motion to set aside the consent judgment. Marshall was permitted to and did file his counter-affidavits on or about September 6, 1988. As of the date of the filing of the bankruptcy, no decision had yet been forthcoming from Judge Glazer on the MDA's motion.

*Other Relevant Motions Brought In The State Court Actions*

On April 27, 1988, Marshall filed his motion to consolidate both cases before Judge Harrison. That motion was denied, apparently by Judge Harrison's oral order rendered from the bench.

At the May 31, 1989 hearing, Judge Harrison orally denied as untimely Marshall's

motion to amend his complaint by adding his sons as party plaintiffs. However, Marshall's motion to amend his complaint in other respects was granted. Still in dispute is the extent of the amendment permitted by Judge Harrison's ruling. The MDA contends that the amendment was to permit only a change in the number of sheep at issue and the dollar amount claimed for them. When Marshall filed his amended complaint, however, he included what MDA asserts is a new cause of action as well as a number of amendments which went beyond the limited scope of Judge Harrison's ruling. When the parties were unable to settle on an order, the matter of the complaint amendment was set for hearing on June 28, 1989.

Also set for hearing on June 28, 1989 was a motion filed by Marshall's three sons to intervene as party plaintiffs.

*The Bankruptcy Filing, Removal Of The State Court Matters And Motions To Abstain And/Or Remand*

The Marshalls filed Chapter 11 on June 26, 1989 and proceeded to remove cases 11166 and 11167 from the Michigan Court of Claims. Once removed those cases became adversary proceedings.

Marshall then filed in this court his motion to amend his complaint to add the fifteen new counts which were in dispute and set for resolution on June 28, 1989 in state court. Marshall's three sons also filed in the Bankruptcy Court their motion to intervene, apparently virtually identical to the motion filed in 11166.

Neither of these motions has been set for hearing in this court pending resolution of the MDA's motion to abstain and/or remand.

\*　　\*　　\*　　\*　　\*　　\*

On August 1, 1989, a grand jury of the U.S. District Court, Western District of Michigan, indicted Marshall on one count of conspiracy to defraud the federal government and on four counts of mail fraud. The indictment relates to approximately $365,000.00 in federal indemnification payments which Marshall obtained for scrapied, and allegedly scrapied sheep, transferred into or out of his flock during the same period of time as is covered by the removed actions. Marshall pleaded innocent at the August 28, 1989 arraignment.

### MANDATORY ABSTENTION

28 U.S.C. Section 1334(c)(2) provides in relevant part: ·

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11 with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Based on the language of this provision, if the following six requirements are satisfied, the district court must abstain:

(1) A party to the proceeding must file a timely motion to abstain;

(2) The proceeding is based on a state law claim;

(3) The proceeding is a "related to" proceeding;

(4) There is no basis for federal court jurisdiction other than Section 1334;

(5) An action is commenced in state court; and

(6) The state court action can be timely adjudicated.

The first requirement is satisfied, as Marshall does not dispute that the MDA timely filed its motion for mandatory abstention pursuant to Section 1334(c).

The second requirement is also met. Both parties agree that the removed actions are based solely on state law claims: breach of contract in 11166 and in 11167 a tort claim for failing to comply with the provisions of Michigan Act 181 of the Public Acts of 1919, as amended.

█ The first step at which Marshall and the MDA disagree, however, is whether the removed cases are core or are "related to." If core, then mandatory abstention is inap-

plicable. *In re Sun West Distributors, Inc.,* 69 B.R. 861, 866 (Bkrtcy.S.D.Cal. 1987). *In re Turner,* 70 B.R. 486, 488 (Bkrtcy.Mont.1987).

■ Marshall contends that the matters removed from the state court are core because they fall within 28 U.S.C. Sections 157(b)(2)(B), (C), (E), and (O).[1]

Because the Bankruptcy Code does not explicitly define the term "core proceeding", two general interpretations of the parameters of core jurisdiction under Section 157(b)(2) have developed. One line of cases has adopted an "expansive" analysis in construing the definition of core proceedings broadly to encompass all proceedings that come within the literal meaning of § 157(b)(2). This viewpoint is premised on the belief that the Bankruptcy Amendments and Federal Judgeship Act of 1984 (1984 Amendments) rectified the constitutional infirmities enunciated in *Northern Pipeline v. Marathon Pipeline,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).[2]

The other line of cases has adopted a more "restrictive" analysis in holding that the term "core proceeding" must be interpreted narrowly in light of *Marathon.* Those courts take the view that the 1984 Amendments do not cure the constitutional defects detailed in *Marathon,* but that the 1984 Amendments adjust the Bankruptcy Court's jurisdiction to comport with guidelines established by the Supreme Court. Thus, Section 157(b)(2) must be construed narrowly to fit within the constitutional purview of *Marathon.*[3]

Adopting the "restrictive" analysis, this court holds that the removed cases do not fall within any of the sections cited by Marshall. Accordingly, I find that they are not core proceedings.

Section 157(b)(2)(B), which states that core proceedings include "allowance or disallowances of claims against the estate", is inapplicable because the MDA has not filed a claim against the estate. A claim against the estate is initiated by the filing of a proof of claim as provided by Bankruptcy Rules 3001 and 3002: when a claim is filed special rules of bankruptcy are invoked and resolution of that claim is a core proceeding since it can only arise in the context of bankruptcy. *See Wood v. Wood,* 825 F.2d 90, 97 (5th Cir.1987). *In re Republic Reader's Service, Inc.,* 81 B.R. 422, 429 (Bkrtcy.S.D.Tex.1987). What Marshall argues constitutes a core proceeding was not initiated by the MDA in the two adversary proceedings, but arose as a counterclaim to Marshall's state law causes of

---

**1.** 28 U.S.C. § 157(b)(2)

(2) Core proceedings include, but are not limited to—

....

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

....

(E) orders to turn over property of the estate;

....

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the the equity security holder relationship, except personal injury tort or wrongful death claims.

**2.** *See, e.g., In re Wood,* 52 B.R. 513 (Bkrtcy.N.D. Ala.1985); *Matter of Baldwin–United Corp.,* 52 B.R. 539 (Bkrtcy.S.D.Ohio 1985); *In re Pied Piper Casuals, Inc.,* 50 B.R. 549 (Bkrtcy.S.D.N.Y.

1985); *In re All American of Ashburn, Inc.,* 49 B.R. 926 (Bkrtcy.N.D.Ga.1985); *In re De Lorean Motor Co.,* 49 B.R. 900 (Bkrtcy.E.D.Mich.1985); *In re Harry C. Partridge, Jr. & Sons, Inc.,* 48 B.R. 1006 (S.D.N.Y.1985); *In re Lion Capital Group,* 46 B.R. 850 (Bkrtcy.S.D.N.Y.1985); *Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727 (D.Ga. 1985); *In re Marketing Resources Intern Corp.,* 43 B.R. 71 (Bkrtcy.E.D.Pa.1984).

**3.** *See, e.g., In re Sturm,* 66 B.R. 325 (Bkrtcy.N.D. Ill.1986); *In re L.T. Ruth Coal Co., Inc.,* 66 B.R. 753 (Bkrtcy.E.D.Ky.1986); *In re Shaford Companies, Inc.,* 52 B.R. 832 (Bkrtcy.D.N.H.1985); *In re TWI, Inc.,* 51 B.R. 470 (Bkrtcy.E.D.Va. 1985); *In re American Energy, Inc.,* 50 B.R. 175 (Bkrtcy.D.N.D.1985); *In re Morse Electric Co., Inc.,* 47 B.R. 234 (Bkrtcy.N.D.Ind.1985); *In re Pierce,* 44 B.R. 601 (D.Colo.1984); *Mohawk Industries v. Robinson Industries,* 46 B.R. 464 (D.Mass.1985); *In re Smith–Douglass, Inc.,* 43 B.R. 616 (Bkrtcy.E.D.N.C.1984); *In re Atlas Automation, Inc.,* 42 B.R. 246 (Bkrtcy.E.D.Mich. 1984); *In re Dakota Grain Systems, Inc.,* 41 B.R. 749 (Bkrtcy.D.N.D.1984).

action. We do not believe that Marshall can turn his purely state law actions into a Section 157(b)(2)(B) "core proceeding" by simply removing these prepetition cases, along with the MDA's counterclaim, to this court.

The closest case found was *In the Matter of Century Brass Products*, 58 B.R. 838 (Bkrtcy.D.Conn.1986). There the Chapter 11 debtor-in-possession filed three adversary proceedings against three related defendant corporations in an attempt to recover prepetition accounts receivable. Each defendant objected to debtor Century's designation of the accounts receivable actions as Section 157(b)(2)(E) "turnover actions" and thus core matters. The debtor also further argued that even if the actions were not turnover proceedings, the defendants' filing of "unrelated" counterclaims transformed them into core proceedings under Sections 157(b)(2)(B) and (C).

Disagreeing with the debtor's characterization of defendants' counterclaims as "unrelated", Judge Krechevsky noted that since they alleged breach of warranty, misrepresentation, failure to deliver, the owing of a credit balance and were all based upon sales of the same type of goods by the debtor to the defendants, they were compulsory counterclaims pursuant to Bankruptcy Rule 7013 incorporating Fed.R. Civ.P. 13. Judge Krechevsky was not persuaded that the defendants' filing of their compulsory counterclaims turned a noncore "related to" matter into one that was core.

I find a significant difference for jurisdictional purposes between a defendant's compulsory counterclaim to a debtor's complaint and a debtor's counterclaim to a creditor's proof of claim. There are strong arguments for the constitutionality of a non-article III judge hearing and determining claims against the estate under 28 U.S.C. sec. 157(b)(2)(B) and counterclaims by the estate under sec. 157(b)(2)(C): consent, and the possibility that such an exercise of jurisdiction does not vest the essential attributes of judicial power in a non-article III officer. Neither of these is available in the analysis of a defendant's compulsory counter-

claim to a debtor's complaint. 58 B.R. at 845.

The concept of a matter being core where the creditor either files a claim against the estate (Section 157(b)(2)(B)), or the estate files a counterclaim to a claim filed in the estate (Section 157(b)(2)(C)) is based on implied consent.

A finding of jurisdiction by implied consent is not justifiable in the present matter. It may be reasonable to find consent under secs. 157(b)(2)(C) and 157(c)(2) when a creditor files a proof of claim, and the estate objects in the form of a counterclaim. But no such justification exists when the counterclaim is filed not by the estate, but by a party sued by the estate. A defendant's filing of a compulsory counterclaim cannot in any meaningful way be deemed voluntary; if a compulsory counterclaim is not filed, the defendant is barred from bringing a later independent action on the claim. *National Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir.1961). For this reason, courts have held in other contexts that a defendant's assertion of a compulsory counterclaim does not constitute a waiver of objections to improper venue or lack of personal jurisdiction. *See e.g., Dragor Shipping Corp. v. Union Tank Car Co.*, 378 F.2d 241, 244 (9th Cir.1967); *See also* 6 C. Wright A. Miller, Federal Practice and Procedures secs. 1409, 1416 (1971 & Supp.1985) (cites *Dragor Shipping* as the "better rule"). To the extent that secs. 157(b)(2)(B) and (C) are based upon the concept of consent expressed in Sec. 157(c)(2), I find them not applicable to this proceeding.

. . . .

The ability to hear and determine counterclaims against the estate by a party that the estate has sued, on the other hand, would vest bankruptcy judges with powers nearly as great as those found invalid in *Northern Pipeline*. A compulsory counterclaim *against* the estate does not transform into a core proceeding what otherwise would be noncore. *Mohawk Indus. v. Robinson Indus.*, 46

Bankr. 464, 466 (D.Mass.1985). 58 B.R. at 846.

Michigan Court Rule 2.203(A) and (E) address counterclaims.[4] As clarified by Callaghan's,

> The Michigan Court Rules of 1985 provide that in a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against the opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. Under the former General Court Rules this provision was limited to complaints rather than to pleadings generally. The Michigan Court Rules of 1985 replaced "complaint" with "pleading." (citations omitted) *Callaghan's Michigan Pleadings & Practice*, Volume 2, 1987 (2d Edition), p. 398.

MCR 2.203(E) states that "a counterclaim or cross-claim must be filed with the answer or filed as an amendment in the manner provided by MCR 2.118." The MDA's counterclaim in 11166 seeks recovery of funds it paid to other sheep farmers as a result of scrapie infected sheep which it is alleged Marshall knowingly transferred from his flock to other flocks. The counterclaim also seeks reimbursement of the MDA's costs of eradicating Marshall's flock as a result of the agreement which forms the basis for 11166. It is patently

clear that as in *Century Brass* the MDA's counterclaims are compulsory. Accordingly, involuntary removal has not transformed these "related to" proceedings to ones which are core.

Marshall's reliance on *In re Meyertech Corp.*, 831 F.2d 410, 417 (3rd Cir.1987), is misplaced as that case is readily distinguishable: first, in *Meyertech* the creditor filed its claim against the estate and; second, the creditor, not the debtor, initially filed its action prepetition, the basis of which was the validity of a claim which accrued under state law prior to bankruptcy.

Nor is this a core proceeding under Section 157(b)(2)(C), "counterclaims by the estate against persons filing claims against the estate." The MDA has not filed a claim against the estate. Marshall's removed state court actions are his direct claims against the MDA, not counterclaims.

Similarly, Marshall's argument that these adversary proceedings are core proceedings under Section 157(b)(2)(E) "orders to turnover property of the estate", is also in error. While other Bankruptcy Courts have broadly interpreted Section 157(b)(2)(E)[5], this court declines in general to follow that line of cases, since to do so would run afoul of the Supreme Court's *Marathon* decision. Instead, this court will follow the more narrow interpretation placed on that section by an opposing line of cases.[6] The complaint and counterclaim

---

**4.** RULE 2.203 JOINDER OF CLAIMS, COUNTERCLAIMS, AND CROSS–CLAIMS

(A) Compulsory Joinder.

(1) In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

. . . .

(E) Time for Filing Counterclaim or Cross–Claim. A counterclaim or cross-claim must be filed with the answer of filed as an amendment in the manner provided by MCR 2.118. If a motion to amend to state a counterclaim or cross-claim is denied, the litigation of that claim

in another action is not precluded unless the court specifies otherwise.

. . . .

**5.** *See, e.g., In re Franklin Computer Corp.*, 50 B.R. 620 (Bkrtcy.E.D.Pa.1985); *In re Lion Capital Group*, 46 B.R. 850 (Bkrtcy.S.D.N.Y.1985); *In re Harry C. Partridge, Jr. & Sons, Inc.*, 48 B.R. 1006 (S.D.N.Y.1985); *In re All American of Ashburn, Inc.*, 49 B.R. 926 (Bkrtcy.N.D.Ga.1985).

**6.** *See, e.g., In re B & L Oil Company*, 46 B.R. 731 (D.Colo.1985); *In re Atlas Automation Inc.*, 42 B.R. 246 (Bkrtcy.E.D.Mich.1984); *In re Crabtree*, 55 B.R. 130 (Bkrtcy.E.D.Tenn.1985); *In re Century Brass Products, Inc.*, 58 B.R. 838 (Bkrtcy.Conn.1986); *In re Satelco, Inc.*, 58 B.R. 781 (Bkrtcy.N.D.Tex.1986).

in the removed cases are based solely on state law contract and tort theories.

In *Republic Reader's Service*, 81 B.R. 422, the Debtor's Chapter 11 adversary proceedings, based on a prepetition action originally filed by the creditor in state court and founded on interpretation of a service agreement, sought turnover of property, accounting, and damages under state law. Defendants counterclaim alleged breach of contract, fraud and tort.

As cogently explained by the Honorable Margaret A. Mahoney:

> Although money due a Chapter 11 debtor can be described as "property of the estate" for which the plaintiff is requesting a "turnover" order, in light of the fact that the 1984 Amendments to Title 11 were enacted in response to the *Marathon* decision, it is doubtful that Congress intended this type of action to be finally resolved by a Bankruptcy Court. 81 B.R. at 430.

In *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155 (Bkrtcy.E.D.N.Y.1986), the Chapter 11 debtor contractor brought suit against commissioners of the city departments of transportation and general services alleging damages from breach of contract and interference with the debtor's ability to timely perform under the contract. The defendants moved to withdraw the reference, remove the adversary proceeding to the district court and for abstention. In a thoughtfully reasoned opinion, the Honorable Marvin A. Holland noted that simply because recovery on a claim will bring money into the estate, and thus arguably is a significant nexus between that proceeding and the bankruptcy, does not turn a "related to" matter into one which is core.

> A bankruptcy court cannot hear and make its final determination absent consent of the parties in a non-core proceeding merely because of some peripheral connection to the bankruptcy case. Such reasoning flies in the face of *Marathon* and does an injustice to Article III. Section 157(b)(2)(E), as well as § 542, must be strictly construed in a fashion which will avoid conflict with *Marathon*. A

turnover proceeding can only be considered a core proceeding under § 542(b) when its purpose is the collection rather than the creation, recognition, or liquidation of a matured date. Since the [*In re*] *Pied Piper* [*Casuals, Inc.*, 50 B.R. 549 (Bkrtcy.S.D.N.Y.1985)] and [*In re*] *National Equipment* [*& Mold Corp.*, 64 B.R. 239 (Bkrtcy.N.D.Ohio 1986)] courts were called upon to determine whether debt was matured, due and owing, it was being asked to go beyond that which the Constitution requires and the statute permits. When a bona fide dispute exists as to liability involving state law, then the proceeding cannot be core under § 157(b)(2)(E). *Marathon* [102 S.Ct.] at 2871. 69 B.R. at 171.

In these two adversary proceedings there is a legitimate dispute as to whether Marshall is entitled to recover any money from the MDA under either his contract or tort claim. Since a resolution of those actions involves a state law determination of MDA's liability under the contract, it is a step away from the true Section 542 turnover proceeding and therefore does not constitute a core proceeding under Section 157(b)(2)(E).

This court also fails to find that invoking the catchall provisions of Section 157(b)(2)(O) aids Marshall's argument. The removed actions involve only questions of state law. Neither action could have been commenced in either the bankruptcy or district court, if Marshall had not filed his eleventh hour Chapter 11 bankruptcy. Neither suit is dependent upon, or requires the application of bankruptcy law. *In re Revco*, 99 B.R. 768, 774 (N.D.Ohio 1989). It is true that Marshall's claims against the MDA can be thought of as proceedings "affecting the liquidation of the assets of the estate", because, if he prevails, the estate will have a significant sum of money to distribute to its creditors. It may also be true that because the MDA asserted its compulsory counterclaim in 11166, this matter could be thought of as involving the "adjustment of the debtor-creditor ... relationship." All proceedings, however, which could literally be determined as core under

the various statutory definitions of Section 157(b)(2)(O) are not necessarily so.

This result is based on the U.S. Supreme Court's *Marathon* decision which also involved a breach of contract claim. To hold that the breach of contract action is core would directly contravene *Marathon* and impermissibly result in an Article I Court finally adjudicating rights traditionally cognizable in Article III Courts. *Mohawk Industries, Inc.*, 46 B.R. 464, 465 (D.Mass. 1985).

The "bottom line" of the United States Supreme Court decision [*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* 458 U.S. 50, 102 Sup.Ct. 2858, 73 L.Ed.2d 598 (1982)] was to the effect that it was constitutionally impermissible for a non-article III bankruptcy court to try such a State law claim to a final conclusion. As such, the broad grant of jurisdiction to the bankruptcy courts provided under the 1978 Reform Act was struck down because the judicial power had been conferred upon judges who lacked life tenure and protection against salary diminution, i.e. the attributes of Article III Judges. Therefore, although the language found in 11 U.S.C. § 157(b)(2)(B) and (O) would indicate unambiguously that the case before the Court is a core proceeding, when compared to the factual circumstances found in the *Marathon* case, which inspired the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, the conclusion is inescapable that this matter is not a core proceeding. The allegations of the original complaint sound only state law causes of action which would not be properly before any federal court absent the filing of the bankruptcy case. As such, the original complaint is determined to be a related or non-core proceeding. *In re Mauldin*, 52 B.R. 838, 841 (Bkrtcy.N.D.Miss.1985).

In accord are *In re Illinois–California Express*, 50 B.R. 232 (Bkrtcy.D.Colo.1985); *In re Atlas Automation, Inc.*, 42 B.R. 246 (Bkrtcy.E.D.Mich.1984); *In re Morse Elec. Co., Inc.*, 47 B.R. 234 (Bkrtcy.N.D.Ind. 1985); *In re American Energy, Inc.*, 50 B.R. 175 (Bkrtcy.D.N.D.1985); *In re Nanodata Computer Corp.*, 52 B.R. 334 (Bkrtcy.W.D.N.Y.1985); *In re Shaford Cos.*, 52 B.R. 832, (Bkrtcy.D.N.H.1985); and *In re R.I. Lithograph Corp.*, 60 B.R. 199 (Bkrtcy.D.R.I.1986).

To the extent that guidance is needed in determining whether a proceeding which fits within the literal terminology of Section 157(b)(2)(O) is core or non-core, this court adopts the definition offered by the Honorable Thomas F. Waldron in *Matter of Commercial Heat Treating of Dayton, Inc.*, 80 B.R. 880, 888 (Bkrtcy.S.D.Ohio 1987):

> A non-core proceeding is identified by the following characteristics—a proceeding filed in the bankruptcy court alleging a cause of action that:
>
> (1) is not *specifically* identified as a core proceeding under § 157(b)(2)(B) through (N),
>
> (2) existed prior to the filing of the bankruptcy case,
>
> (3) would continue to exist independent of the provisions of Title 11, and
>
> (4) in which the parties rights obligations or both are not significantly affected as a result of the filing of the bankruptcy case.[7]

To the extent that it suggests otherwise, this court respectfully declines to follow *In re DeLorean Motor Co.*, 49 B.R. 900 (Bkrtcy.E.D.Mich.1985).

Marshall also cites four additional cases in support of his position that the removed State Court actions fall within Section 157(b)(2)(O): *Sun West Distributors Co.*, 69 B.R. at 863–864; *In re Finley*, 62 B.R. 361 (Bkrtcy.N.D.Ga.1986); *Matter of Bald-*

---

**7.** Examples of proceedings which properly fall within the scope of the catchall provisions of Section 157(b)(2)(O) may be found in *In re Tureaud*, 59 B.R. 973 (N.D.Okl.1986) (trustee's application for substantive consolidation of certain affiliate corporations constitutes core proceeding; *In re Oceanquest Feeder Service, Inc.*,

56 B.R. 715 (Bkrtcy.D.Conn.1986) (motion to change venue is a core proceeding; and *In re Rustic Mfg., Inc.*, 55 B.R. 25 (Bkrtcy.W.D.Wis. 1985) (principal employees of corporate debtor's action to enjoin secured creditor from maintaining state court action against their guarantees is a core proceeding.

win United Corp., 48 B.R. 49 (Bkrtcy.S.D. Ohio 1985); and *In re Pioneer Development Corp.*, 47 B.R. 624 (Bkrtcy.N.D.Ill. 1985). This court does not find those cases helpful to Marshall's position.

Neither *Sun West* nor *Finley* discuss Section 157(b)(2)(O). *Sun West* was a core proceeding because the debtor commenced it as a counterclaim against the creditor which had filed a claim based on state law contract against the estate. The court found in *Finley* a core proceeding under Sections 157(b)(2)(B), (E) and (K) where two groups of creditors were in dispute over the same property which belonged to the estate and which the plaintiffs had attached prior to the Chapter 11 filing.

The court in *Baldwin–United* found the adversary proceeding to be a core proceeding under Sections 157(b)(2)(E) and (O), where the debtor sought a turnover of money owed on a debt which was "matured, payable on demand, or payable on order" under Section 542(b).

Finally, the court finds most curious Marshall's citation of *In re Pioneer Development Corp., supra.* In that case the Trustee and the Bank were seeking to recover ownership of a promissory note payable to the debtor which the debtor had assigned to the defendant. Both the bank and trustee were claiming the transfer was either fraudulent under Section 548 or a preference under Section 547. Not only does *Pioneer* contain no mention or discussion of Section 157(b)(2)(O), but the court further determined that the abstention provision of Section 1334(c)(2) was inapplicable since by its terms that section did not apply to pending adversary proceedings. Again, as with *Baldwin–United, Pioneer* is neither comparable nor analogous to the facts and circumstances of the two removed actions.

The fifth requirement that "an action be commenced in state court" initially posed some difficulties. Earlier cases did hold that under the circumstances presented here, mandatory abstention was not appropriate, only remand. *See In re Princess Louise Corp.*, 77 B.R. 766, 771 (Bkrtcy.C. D.Cal.1987); *In re: 666 Associates*, 57 B.R. 8, 12 (Bkrtcy.S.D.N.Y.1985); *In re Ross*, 64 B.R. 829, 834 (Bkrtcy.S.D.N.Y.1986); *Matter of MicroMart, Inc.*, 72 B.R. 63 (Bkrtcy. N.D.Ga.1987); and *In re Unity Foods, Inc.*, 35 B.R. 876, 880 (Bkrtcy.N.D.Ga. 1983).

In *In re 666 Associates*, and *Ross*, the Honorable Prudence B. Abram held that Motions to Abstain based on Section 1334(c)(2) were applicable only to cases commenced originally in bankruptcy court.

The language of § 1334(c)(2) reflects that the mechanics are premised on the existence of two proceedings: one in the bankruptcy court and a second one in the state court. Indeed if there were only one proceeding, and the court abstained with respect to it, nothing would go forward. In a removed action, there is perforce only one proceeding once removal has been made. This court concludes that § 1334(c)(2) is not applicable to a removed action. If Congress had intended that in considering whether to remand a removed action, the court should look to § 1334(c)(2) it would have been a simple matter to insert the appropriate cross-reference in § 1452(b), just as a cross-reference to § 1334 was added in § 1452(a). The absence of such a cross-reference is striking since removed actions would principally be state court actions and presumably be based on state law. 57 B.R. at 12.

Subsequently the Honorable R. Glen Ayers, Jr. analyzed the relationship between 28 U.S.C. Sections 1334 and 1452 and the rationale of *666 Associates* in *In re Chiodo*, 88 B.R. 780 (W.D.Tex.1988). Rejecting the reasoning of *666 Associates* he found that both Sections 1334 and 1452 "may be harmonized without limiting the plain language of either section." 88 B.R. at 785.

The plain meaning of the jurisdictional reference in section 1452(a) is that section 1334 applies in its entirety. The cross-reference does not state that actions may be removed if the district court has jurisdiction under Section 1334(b) but that is the effect of the *666 Associates* reasoning ... The lack of a cross-reference in Section 1452(b) is not important

because Section 1334(c)(2) is incorporated by Section 1452(a) along with the rest of § 1334. (citation omitted). 88 B.R. at 784.

This court also rejects the holding of *666 Associates* and its progeny and adopts the reasoning of *Chiodo* in holding that the mandatory abstention provision of Section 1334(c)(2) may apply to actions removed to the bankruptcy court pursuant to Section 1452(a). *See In re Revco D.S. Inc.*, 99 B.R. 768, 773 (N.D.Ohio 1989), and *In re Pacor, Inc.*, 72 B.R. 927, 931 (Bkrtcy.E.D.Pa.1987).

Thus the fifth requirement is met, since both actions were commenced, pending, and proceeding toward resolution for almost two years in the Court of Claims at the time of removal.

The last requirement is that the state court action must be able to be timely adjudicated in a state forum of appropriate jurisdiction. The MDA argues that the actions can be so timely adjudicated, pointing to the procedural history of the two removed cases. Specifically, 11166 was just three weeks away from trial when removed. And Judge Glazer had completed significant work on 11167 when it was removed, as a major motion for summary judgment had been under advisement for some ten months.

Marshall uses the same procedural history to argue that the MDA failed to satisfy its burden of showing that the state actions would be timely adjudicated, citing *In re Burgess*, 51 B.R. 300, 301 (Bkrtcy.S.D.Ohio 1985) and *In re S.E. Hornsby and Sons*, 45 B.R. 988 (Bkrtcy.M.D.La.1985). In *Burgess*, however, the court refused to consider the "timely adjudication" issue because the moving party simply asserted the matter would be timely adjudicated without presenting evidence to the court. While in *Hornsby*, Judge Steen refused abstention where the action had

> ... made absolutely no progress through and including the date of the filing of this petition. Even some months subsequent to the filing of the bankruptcy petition the state law liquidator indicated that he had no interest in pursuing the case. 45 B.R. at 996.

Both *Burgess* and *Hornsby* have been criticized as seeming "to reverse the usual burden implicit in the general rule that the party seeking to litigate in a federal forum must first establish that right." *Acolyte Elec. Corp. v. City of New York*, 69 B.R. at 180.

A review of the virtually undisputed procedural history of both cases as presented at oral argument and in the briefs as well as the unrefuted affidavit of attorney Alan J. Barak clearly shows that the facts of *Hornsby* bear absolutely no resemblance to what has occurred here.

Upon reflection it seems rather that the opposite has occurred. Case 11166 has not only moved apace but it has moved apace in resolving many issues and procedural disputes contrary to the various positions taken by Marshall. This court finds somewhat specious Marshall's argument that he does not want to "languish in state court where timely adjudication is not possible", when the case was a mere three weeks away from trial when it was removed. While contending in his brief that timely adjudication was not possible Marshall complains that when asked, Judge Harrison would not adjourn the July 17, 1989, trial date and further that the Judge's "intention was to dispose of the action quickly." (Marshall's Brief at p. 18.) Despite Marshall's protests to the contrary, it seems quite apparent that timely adjudication in the state court was a significant, if not the prime motivation, for filing Chapter 11 and removing both cases.

Section 1334(c)(2) explicitly references the "forum of appropriate jurisdiction." These removed cases have come from the Court of Claims, a specialized court eminently qualified to deal with the issues of sovereign immunity anticipated to arise in this proceeding. *See Ross v. Consumers Power Co.* (on Reh) 420 Mich. 567, 363 N.W.2d 641 (1984). In addition to issues of sovereign immunity, the Court of Claims will also have to determine state law rights under the Animal Industry Act and the Michigan Court of Claims Act, statutes with which it is presumably familiar but which are unfamiliar to this court.

Another factor which strongly favors abstention is this court's strong belief that the Debtor is engaging in forum shopping. In fact, Marshall states that "... if Congress did not wish for parties to engage in 'forum shopping' then Section 1452 should never have been enacted." (Marshalls' Brief at p. 24) The court finds this statement so impertinent as to not merit a response.

The state court is better positioned to proceed to trial on the merits. The cases can not only be timely adjudicated there, but also adjudicated well before this court could both familiarize itself with the areas of law at issue and hear the matter.

Having determined that mandatory abstention is required we find it unnecessary to discuss permissive abstention under Section 1334(c)(1).

## REMAND

■ Alternatively or conjunctively with this court's recommendation for mandatory abstention, we also recommend that both actions be remanded.

The standard for remand is set out in 28 U.S.C. Sec. 1452(b):

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise.

Bankruptcy Rule 9027(e) sets forth the procedure for hearing, ruling on a motion for remand, and preparation and service of objections to this court's report and recommendations.[8]

■ The types of equitable considerations relevant to a decision to remand are as follows:

(1) duplicative and uneconomical effort of judicial resources in two forums;

(2) prejudice to the involuntarily removed parties;

(3) *forum nonconveniens;*

(4) a holding that a state court is better able to respond to a suit involving questions of state law;

(5) comity considerations;

(6) lessened possibility of an inconsistent result; and

(7) the expertise of the court in which the matter was pending originally, e.g. a Court of Claims or the United States Customs Court. *In re U.S. Air Duct Corporation,* 8 B.R. 848, 854 (Bkrtcy. N.D.N.Y.1981).

Both adversary proceedings involve only state law claims pending since April of 1987. At this point it is not certain, whether the issues involve unsettled state law. The MDA does allege however that questions will arise under the Animal Industry Act which have not been previously addressed by the state court.

There are significant comity considerations owing to the number and extent of the state court's prior rulings. The filing of the Chapter 11 and removal of these actions just two days before Judge Harrison was to hear the motion of Marshall's three sons to intervene as party plaintiffs (a motion previously denied as untimely by Judge Harrison when brought by Marshall), and to settle the matter of amending Marshall's complaint (a matter with which Judge Harrison is intimately knowledgeable), leads the court to believe that Marshall is attempting to avoid previous rulings made in the MDA's favor. Almost immediately after the bankruptcy filing, both these motions were brought in this court. To the extent that both removed cases were also assigned here, it appears

---

**8.** Rule 9027 REMOVAL
. . . .
(e) Remand. A motion for remand of the removed claim or cause of action shall be filed with the clerk and served on the parties to the removed claim or cause of action. Unless the district court orders otherwise, a motion for remand shall be heard by the bankruptcy judge, who shall file a report and recommendation for disposition of the motion. The clerk shall serve forthwith a copy of the report and recommendation on the parties. Within 10 days of being served with a copy of the report and recommendation, a party may serve and file with the clerk objections prepared in the manner provided in Rule 9033(b). Review by the district court of the report and recommendation shall be governed by Rule 9033.

Marshall has further attempted to avoid Judge Harrison's previous ruling denying consolidation. It would not be judicially economical for this court to take its already limited time to rehear and decide these motions in conjunction with the concomitant issues which they would undoubtedly raise of *res judicata* and collateral estoppel. Prejudice to the MDA, the involuntarily removed party, is obvious given the delay which would result from not remanding these proceedings and the potential circumvention of prior rulings by the court in which Marshall chose to initiate both cases.

The proceedings are non-core involving no issues peculiar to bankruptcy law but do involve adjudication of rights between the debtor and a non-debtor party.

Moreover, there has been an evidentiary hearing of over eight days, at the conclusion of which Judge Harrison granted MDA's motion to set aside the consent judgment entered in 11166. Both parties agree that the issue before Judge Harrison was Marshall's fraud. Marshall's counsel, however, points out that Judge Harrison did not use the word fraud. Nonetheless, this court is disinclined to believe that those findings will not play a significant part in the trial of Marshall's complaint to attempt to recover under the initial agreement. At the very least, there will again be numerous questions as to the *res judicata* and collateral estoppel effect of those findings. Accordingly, having conducted the extensive evidentiary hearing and viewed the witnesses, including Marshall, in the interest of both comity and judicial economy, these disputes are best resolved by Judge Harrison.

The Michigan Court of Claims is a specialized court with particular experience in dealing with the issues of sovereign immunity also bound to arise.

An additional equitable ground for remand is mandatory abstention. *In re Revco, supra,* and *In re Chiodo, supra.* As one court has stated, "the Congressional mandate of abstention in certain 'related to' cases enhances the importance of comity as an equitable ground for remand."

*Thomasson v. Amsouth Bank,* 59 B.R. 997, 1002 (N.D.Ala.1986).

Neither *forum nonconveniens* nor the lessened possibility of an inconsistent result is a significant factor here.

Finally, the court feels compelled to note that at the hearing on abstention, counsel admitted that all of Marshall's suffolk sheep had been destroyed. When asked what business the Marshalls were attempting to reorganize by filing Chapter 11, the explanation offered was that if the Marshalls succeed in these two adversary proceedings they would then have the funds to purchase more sheep and return to the sheep breeding business. While such an argument might be more persuasive where the debtor was seeking to recover property titled to it and in the possession of another, a particular defined *res,* or an undisputed *bona fide* account receivable, such an argument is unavailing here. It appears that this Chapter 11 was filed in direct contravention of the dictates of *Matter of Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir.1985). In her opinion, the Honorable Cornelia G. Kennedy affirmed the dismissal of the Chapter 11 where the only significant assets of the Chapter 11 Debtor Trust were contingent—a chose in action against the vendee and breach on the land contract, and the possibility of setting aside the foreclosure sale as a fraudulent conveyance. Considering that there appears to be no business to reorganize under Chapter 11, it appears that these two adversary proceedings wag the tail of the bankruptcy, instead of the other way around.

Dated: January 12, 1990