In re Kent C. RARICK and Kathleen
A. Rarick, d/b/a Rarick Property
& Investments, Debtors.

**FIRST NATIONAL BANK
OF WESTMINSTER,
Plaintiff,**

v.

**Kent C. RARICK and Kathleen A.
Rarick, d/b/a Rarick Property
& Investments, Defendants.**

Civ. A. No. 91–B–1109.
Bankruptcy No. 89 B 12624 D.
Adv. No. 91 1267 RJB.

United States District Court,
D. Colorado.

Sept. 20, 1991.

James E. Martin, Jr., Albert Edwin Anderson, P.C., Wheat Ridge, Colo., Jack Berryhill, Stephen E. Abelman, Berryhill, Cage & North, P.C., Denver, Colo., for plaintiff.

Lee M. Kutner, Jeffrey S. Brinen, Rubner & Kutner, P.C., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Debtors-defendants (collectively the Raricks) object to the report and recommendation of the bankruptcy court denying their motion for abstention in this adversary proceeding. The matter has been adequately briefed and oral argument will not materially aid its resolution. I grant the Raricks' motion and abstain in favor of the pending state court action.

In November, 1985, the Raricks entered into an agreement with the First National Bank of Westminster ("Bank") for a $500,-000 line of credit. The line of credit was secured primarily by second deeds of trust on certain residential properties owned by the Raricks. The secondary collateral was a "wrap-around" promissory note and second deed of trust held by the Raricks on property owned by a third party, U.S. Motels Denver North, Inc. That note and deed of trust secured an original loan of $1,250,000.00. It was endorsed by the Raricks and assigned to the Bank as part of the 1985 line of credit agreement.

Defendants filed their Chapter 11 petition on September 25, 1989 (Bankruptcy Case No. 89 B 12624 D, "The main bankruptcy case"). In June, 1989, the Bank, claiming default by the Raricks under the line of credit agreement, had begun collecting payments under the terms of the promissory note, applying the payments to the Raricks' outstanding loan balance. In January, 1990, the Raricks brought a "lender liability" suit in Colorado state court, alleging that the Bank had breached the terms of their line of credit agreement, unjustifiably refused to renew it, required the Raricks to sell property in a poor market, required the Raricks to execute cross-collateralization agreements, and surreptitiously purchased the first deed of trust on the motel property while the Raricks were negotiating to purchase it. In October, 1990, on the eve of trial in state court, that action was stayed on the Bank's motion.

On March 14, 1991, the judge presiding over the main bankruptcy case granted the

Raricks' motion to go forward with the state court action, saying that the bankruptcy could not proceed without resolving the issues in that case. On April 1, 1991, the Bank filed this adversary action (Adversary No. 91–1267 RJB, "the adversary action"), seeking a declaratory judgment that it has lawful possession of the same note and deed of trust at issue in the state action. On April 4, 1991, the judge in the main bankruptcy case deferred ruling on the disclosure statements and reorganization plans to allow the state action to go forward. At that hearing, that judge made it clear that the issues in the state action and the issues in the adversary action were inextricably intertwined, and he chastised the Bank for delaying resolution of the state litigation by filing the adversary action.

> The court's impression is that the Bank does not want to litigate. The Bank does not want those issues resolved. The Bank wants to make an end run around the litigation and try to come in the back door and preclude the debtors from having their day in court on those issues and [the Bank's] filing an adversary on limited issues just convinces the Court that that's what [the Bank's] strategy is, and that bothers me.

Hearing of April 4, 1991, p. 9–10. Several weeks later, the Colorado state court lifted its stay of that action and set trial for May 11, 1992.

On June 5, 1991, the presiding judge in the adversary action issued the recommendation that the Raricks' motion to abstain be denied because it is premature and the adversary action and the state action, although related, seek different remedies and can proceed independently. These objections followed.

## I.

A motion for abstention pursuant to 28 U.S.C. § 1334(c) shall be initially heard by the bankruptcy judge, who shall file a report and recommendation for disposition of the motion. B.R. 5011. Within 10 days of being served, a party may file objections to the report and recommendation and seek review in the district court. The district court's review of the report and recommendation is governed by B.R. 9033. B.R. 5011.

Under B.R. 9033, a district court shall make a de novo review of the bankruptcy court's findings of fact and conclusions of law, and may "accept, reject or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." B.R. 9033(d).

## II.

In bankruptcy actions, there are two forms of statutory abstention: mandatory and discretionary. 28 U.S.C. § 1334(c). Congress amended section 1334(c) in 1984 in response to the Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which held that Article I bankruptcy courts could not finally adjudicate private, state law rights. The amendments were designed to broaden the use of abstention to conform to the jurisdictional limits of bankruptcy courts set out in *Marathon.* Congress' addition of the mandatory abstention provision indicates "a clear Congressional policy ... to give state law claimants a right to have claims heard in state court." *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir.1986); *see, In re Counts*, 54 B.R. 730, 735 (Bkrtcy. D.Colo.1985), ("Congress ... has adopted a policy which favors resolution of related state law causes of action in state courts"); *In re Richmond Tank Car Co.*, 119 B.R. 124, 127 (S.D.Tex.1989), (Section 1334 was "amended to reflect an expansion of the abstention doctrine in bankruptcy"). It is against this background that defendants' motion for abstention must be judged.

## A.

28 U.S.C. 1334(c)(2) provides in relevant part:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11,

with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

A district court must abstain if the following six requirements are satisfied: (1) A party files a timely motion; (2) the proceeding is based on a state law claim; (3) the proceeding is a "related to" proceeding; (4) there is no basis for federal jurisdiction other than section 1334; (5) an action is pending in state court; and, (6) the state court action can be timely adjudicated. *See, In re Marshall,* 118 B.R. 954, 958 (W.D.Mich.1990).

The first requirement is met, as the Bank does not dispute that the Raricks' motion was timely. The adversary proceeding is based wholly on state contract and property law. Thus, the second element is satisfied. The Bank claims no other basis for federal jurisdiction other than section 1334, so the fourth element is satisfied. The fifth element is satisfied because the state court action is currently set for trial.

The only elements of mandatory abstention in dispute are whether this case is a "related to" proceeding or a core proceeding, and whether the state action can be timely adjudicated. If it is a core bankruptcy proceeding, then mandatory abstention is inapplicable. *See e.g., In re Marshall,* 118 B.R. at 958.

The distinction between core and noncore bankruptcy proceedings flows from the Supreme Court's decision in *Marathon.* There the Court determined that Article I bankruptcy courts only have jurisdiction to hear claims "core" to federally created statutory rights. "[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state created private rights, such as the right to recover contract damages at issue in this case." *Marathon,* 458 U.S. at 71, 102 S.Ct. at 2871. The Court stressed that the contract and misrepresentation claims

at issue there involved "a right created by *state* law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court." *Id.* at 84, 102 S.Ct. at 2878.

As part of the 1984 bankruptcy amendments, Congress sought to codify the holding of *Marathon* in 28 U.S.C. § 157. Section 157(b)(1) provides that bankruptcy judges may hear and determine "all cases under title 11, and all core proceedings arising under title 11, or arising in a case under title 11." If a proceeding is merely related to a case under title 11, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the Article III district court for final order or judgment. 28 U.S.C. § 157(c)(1). A bankruptcy judge can determine sua sponte whether a proceeding is core or noncore. 28 U.S.C. § 157(b)(3).

Although Congress did not define a core proceeding, it set out a non-exclusive, representative list of 15 types of core proceedings. Plaintiff asserts that three of these make this action a core proceeding—section 157(b)(2)(A), (matters concerning the administration of the estate), 157(b)(2)(B), (allowance or disallowance of claims against the estate or exemptions of property of the estate), and 157(b)(2)(K), (determinations of the validity, extent or priority of liens). I disagree.

In deciding whether an action is core, this district has applied a "restrictive" analysis, holding that the list of the 15 types of core proceedings must be construed narrowly to fit within the constitutional purview of *Marathon. In re Pierce,* 44 B.R. 601 (D.Colo.1984), ("Core proceedings do not encompass separate state law contract actions"); *In re P & P Oilfield Equip., Inc.,* 71 B.R. 621 (Bkrtcy.D.Colo. 1987), (Collection of debtor's accounts receivable is pure state law action and is not core proceeding); *In re Counts,* 54 B.R. 730 (Bkrtcy.D.Colo.1985); *In re Illinois–California Express, Inc.,* 50 B.R. 232 (Bkrtcy.D.Colo.1985). Even if an action arguably fits within the literal wording of one of the 15 core proceedings listed in § 157(b)(2), it still must pass muster under

*Marathon.* *See, In re P & P Oilfield Equip., Inc.,* 71 B.R. at 623; *In re Illinois–California Express, Inc.,* 50 B.R. at 239. [A]lthough the language found in [28] U.S.C. § 157(b)(2)(B) and (O) would indicate unambiguously that the case before the Court is a core proceeding, when compared to the factual circumstances found in the *Marathon* case, ... the conclusion is inescapable that this matter is not a core proceeding. The allegations of the original complaint sound only in state law causes of action which would not be properly before any federal court absent the filing of the bankruptcy case. *In re Marshall,* 118 B.R. at 963.

Recently, the Tenth Circuit adopted a similar definition of core proceedings. In *In re Gardner,* 913 F.2d 1515, 1518 (10th Cir.1990), the court said that "Core proceedings are proceedings which have no existence outside of bankruptcy. Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings." (Citations omitted).

■ The Bank's allegations here have striking parallels to *Marathon.* This matter involves rights created wholly by state law. The adversary action seeks a declaratory judgment that specific commercial paper and the income it produces is rightfully in the Bank's possession. The only claim the Bank has to this note is based on its loan agreement contract with the Raricks. Thus, as in *Marathon,* the adversary action involves only private, state-created rights that cannot finally be adjudicated by a bankruptcy court.

Moreover, this adversary action is before me only because defendants previously filed a Chapter 11 petition. The cause of action existed before the Raricks filed their petition and it involves issues independent of the bankruptcy. Since this adversary proceeding does not depend on the bankruptcy laws for its existence and can proceed in state court, it is not a core proceeding.

The Bank's recitation in its complaint that the adversary action seeks to establish the "validity, priority or extent" of the lien is disingenuous. There is no dispute that the lien on the motel property is valid, nor is there a priority dispute between two creditors. Rather, the dispute centers on who owns the note. Furthermore, for a lien dispute to constitute a core proceeding under § 157(b)(2)(K), the lien must touch property of the estate or the debtor. *In re Holland Industries, Inc.,* 103 B.R. 461 (Bkrtcy.S.D.N.Y.1989); *In re Shain,* 47 B.R. 309 (Bkrtcy.E.D.N.Y.1985); *In re Dr. C. Huff Co., Inc.,* 44 B.R. 129 (Bkrtcy. W.D.Ky.1984). The lien in this case involves the property of a third party and, thus, it cannot be a core proceeding under sub-section (K).

Even if the Bank's possession of the note can be characterized as a "lien" because it obtained possession through a security agreement, sub-section (K) would still not make this a core proceeding. The note was never in the bankruptcy estate because the Raricks endorsed and assigned it in 1985. The adversary action would also run afoul of the jurisdictional limitations set out in *Marathon.*

■ This adversary action does not involve the Bank's claim against the estate for the $500,000 line of credit it extended to the Raricks. Neither party challenges the validity of that debt in this case, so sub-section (B) is also inapplicable. Finally, simply because an adversary proceeding may bring more money into the bankruptcy estate or is necessary for the debtor's reorganization plan does not convert it into a core proceeding under sub-section (A). *In re Altchek,* 119 B.R. 31 (Bkrtcy. S.D.N.Y.1990); *In re Marshall,* 118 B.R. at 962.

Because this action is not a core proceeding, it would have to be tried in federal district court in order to enter a final judgment. Therefore, the final element of mandatory abstention, that the matter be timely adjudicated in state court, is satisfied. Trial in state court is set for May 11, 1992. If the Raricks counter-claim here and request a jury the federal trial could not be set until the Fall of 1992, making the state court a more expeditious forum in which to

resolve these issues. Any prejudice to the Bank from this delay is one of its own making because it had the state action stayed in October, 1990. *See, In re Marshall*, 118 B.R. at 965, ("This court finds somewhat specious Marshall's argument that he does not want to 'languish in state court where timely adjudication is not possible' when the case was a mere three weeks away from trial when [he removed it]").

Therefore, because this is a noncore action, I must abstain in favor of the pending state court action. Accordingly, this adversary proceeding is stayed until the state action is either adjudicated or dismissed.

## B.

■ 28 U.S.C. § 1334(c)(1) provides for discretionary abstention "in the interest of justice, or in the interest of comity with State courts or respect for state law." When assessing whether to abstain under sub-section (c)(1), it is appropriate for a court to look to the elements of mandatory abstention for guidance. *In re Counts*, 54 B.R. at 736. Where most, but not all, of the criteria set forth by Congress for making the mandatory abstention decision are present, "it would thus be keeping with the policy Congress contemplated for this court to abstain here." *In re Illinois–California Express, Inc.*, 50 B.R. at 241. Hence, there is a strong inclination in favor of discretionary abstention where, as here, most of the requirements for mandatory abstention are present.

All three of the statutory interests for discretionary abstention are present here. Abstention is proper "in the interest of justice." In the current economic climate, this district is experiencing a severe strain on its scarce judicial resources from bankruptcy filings and the related adversary proceedings. Sound policy mandates conservation of judicial resources, especially where, as here, there is the potential for needless duplication. *In re Counts*, 54 B.R. at 736. Accordingly, adjudication of state law matters that are ready for trial in state court "is clearly imprudent and as such abstention is appropriate." *In re P & P Oilfield Equip., Inc.*, 71 B.R. at 623.

*See also, Blinder, Robinson & Co., Inc. v. U.S.S.E.C.*, 692 F.2d 102, 106 (10th Cir. 1982).

■ Moreover, the Bank allowed the state action to proceed up until the very eve of trial before it sought a stay based on the bankruptcy, which had been pending since the start of the state action. Likewise, the Bank filed this adversary proceeding in federal court only *after* the judge in the main bankruptcy granted permission for the state action to proceed.

Discretionary abstention is also consistent with the interests of comity and respect for state law. "Where a state court proceeding sounds in state law and bears a limited connection to debtor's bankruptcy case, abstention is particularly compelling." *In re Titan Energy, Inc.*, 837 F.2d 325, 332 (8th Cir.1988). The claim for relief in this adversary proceeding raises legal issues entirely of Colorado state law. Discovery is complete in the state court action and it is ready for trial. It would disregard the interest of comity for a federal court to usurp the role of the state court to decide questions of state law where there is no basis of federal jurisdiction other than the bankruptcy code. Moreover, "respect for state law favors state courts interpreting the laws of the state forum." *In re Illinois–California Express, Inc.*, 50 B.R. at 241; *In re Counts*, 54 B.R. at 736.

Therefore, in the alternative, I exercise my discretionary power and abstain from hearing the Bank's adversary proceeding in favor of the state court action. This proceeding is stayed until the state action has run its course.

Accordingly, IT IS ORDERED THAT:

(1) Debtors'–Defendants' motion for abstention is GRANTED;

(2) This adversary proceeding is STAYED until the state court action is either adjudicated or dismissed.

(3) This action shall be retired from the court's active docket subject to being reactivated for good cause shown.