**In re NEW YORK CITY SHOES, INC.**

**Misc. Nos. 90–0691, 90–0732.**

United States District Court,
E.D. Pennsylvania.

Dec. 21, 1990.

As Amended Jan. 3, 1991.

Mary F. Walrath, Clark, Ladner, Fortenbaugh & Young, Stephen F. Ritner, Philadelphia, Pa., for New York City Shoes, Inc.

Warren T. Pratt, Drinker, Biddle & Reath, Philadelphia, Pa., for Margolis & Co., P.C.

## MEMORANDUM

GILES, District Judge.

Margolis & Company, P.C. ("Margolis") is an accounting firm which New York City Shoes, Inc. ("Debtor") hired to audit its financial statements for the years of 1984, 1985 and 1986. After reviewing Debtor's statements for the ten-month period ending December 31, 1984, and the year ending

December 31, 1985, Margolis approved them as conforming to generally accepted accounting principles. However, during its audit of Debtor's financial statement for the year ending December 31, 1986, Margolis determined that substantial irregularities had occurred during that period in the reporting of corporate transactions. Margolis therefore refused to issue an opinion concerning the 1986 statement. As a result of this second audit, the accuracy of the 1984 and 1985 statements were also called into question.

On July 7, 1987, Debtor filed for relief under Chapter 11 of the Bankruptcy Code. With the approval of the bankruptcy court, Margolis briefly performed further accounting services for Debtor. On December 30, 1987, it filed two proofs of claim in Debtor's bankruptcy proceeding, asserting an unsecured claim in the amount of $6,000 and an administrative claim in the amount of $11,556. These were not claims for services rendered in connection with the 1984–1985 audit. Margolis had previously been paid in full. On April 18, 1989, Debtor filed a complaint against Margolis seeking recovery of a preferential transfer in the amount of $40,600.

On July 18, 1989, the parties settled these competing claims. They entered into a stipulation of settlement whereby Margolis agreed to pay Debtor $28,500 and waive its claims in return for which Debtor agreed to dismiss its complaint. The bankruptcy court approved the stipulated settlement on October 19, 1989. At that point Margolis was no longer a creditor of Debtor and no further claims existed between them.

On August 22, 1990, Debtor filed a complaint in the bankruptcy court alleging that Margolis had breached its service contract with Debtor in connection with the audit of Debtor's 1984–1985 financial statements. Debtor alleges that Margolis failed to perform its services according to generally accepted accounting principles because a proper audit would have revealed that officers of the company were engaging in fraudulent sales transactions. Debtor claims that it was harmed by relying upon the opinion which Margolis issued. It alleges that Margolis is liable for Debtor's overstatement of its income and taxes due and for continued fraud committed on the company subsequent to the issuance of Margolis' opinion.

Margolis filed an answer denying liability. It also filed a motion in this court requesting that the bankruptcy reference be withdrawn pursuant to 28 U.S.C. § 157(d).[1] On October 29, 1990, the bankruptcy court ruled that Debtor's breach of contract claim qualifies as a core proceeding under 28 U.S.C. § 157(b)(2)(C),[2] denied Margolis' request for a jury trial, and set a hearing date.[3] Margolis appealed. This memorandum addresses Margolis' appeal as well as its motion to withdraw the bankruptcy reference. Both determinations turn on the same questions of law.

## I. MARGOLIS' RIGHT TO A JURY TRIAL

This case is controlled by *Granfinanciera, S.A., v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), and *Beard v. Braunstein*, 914 F.2d 434 (3d Cir.1990). In *Granfinanciera* the Supreme Court delivered its latest word on the Seventh Amendment rights of a defendant sued by a trustee in bankruptcy. In *Beard* the Third Circuit applied that word.

---

**1.** 28 U.S.C. § 157(d) provides:
The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

**2.** According to 28 U.S.C. § 157(b)(2)(C), "counterclaims by the estate against persons filing claims against the estate" qualify as core proceedings.

**3.** 28 U.S.C. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11."

The *Granfinanciera* dispute pitted the Seventh Amendment right to a civil jury trial[4] against Congress' power to assign judicial matters to an Article I court in the exercise of its bankruptcy power.[5] The bankruptcy trustee filed suit in the district court to recover allegedly fraudulent monetary transfers made by the debtor's corporate predecessor.[6] The district court referred the matter to bankruptcy court. The defendants requested a jury trial. The bankruptcy judge ruled that the fraud claim was a core proceeding and therefore a non-jury issue. The district court and the court of appeals affirmed.

■ The Supreme Court applied its standard method of Seventh Amendment analysis:

"First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first." If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

**4.** The Seventh Amendment provides: "In Suits at common law, where the value of the controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII.

**5.** Included among Congress' enumerated powers is the power "[t]o establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4.

**6.** 11 U.S.C. § 548(a) provides in pertinent part: (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

*Id.* 109 S.Ct. at 2790 (citation omitted). Applying the initial two-factor analysis to the debtor's claim, the Court ruled that the claim was legal rather than equitable and that the defendants were presumptively entitled to a jury trial. *Id.* at 2790–94. The Court then considered whether Congress had the power to designate and had in fact designated claims for the recovery of fraudulent conveyances as triable before a non-Article III tribunal sitting without a jury.[7]

Adhering to its decision in *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977), the Court ruled that "[u]nless a legal cause of action involves 'public rights,' Congress may not deprive parties litigating over that right of the Seventh Amendment's guarantee to a jury trial." *Granfinanciera*, 109 S.Ct. at 2796. It held that in this case debtor's claim was a private rather than a public right:

There can be little doubt that fraudulent conveyance actions by bankruptcy trustees ... are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy *res*.

*Id.* at 2798. Accordingly, the defendants were granted a trial by jury.[8]

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted....

**7.** Thus, the Supreme Court made it clear that congressional designation of a matter as a core proceeding was insufficient to deprive a defendant of its Seventh Amendment right to a jury trial. While Congress designated the fraudulent conveyance claim at issue in *Granfinanciera* as a core proceeding, the Court ruled that it still had to implicate public rights to be triable without a jury. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 2794–96, 106 L.Ed.2d 26 (1989).

**8.** The Court reserved for another day the decision whether the jury trial to which defendants were entitled could be conducted in bankruptcy court. *Id.* 109 S.Ct. at 2802.

The Supreme Court stressed that its ruling in *Granfinanciera* was consistent with the decision in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). In *Katchen*, an officer of a bankrupt corporation filed claims against the corporation's estate to which the trustee then counterclaimed. The trustee's claim for the recovery of monetary transfers made by the corporate officer was similar in kind to the trustee's claim in *Granfinanciera*. In *Katchen*, however, the Court held that the bankruptcy court could rule on the trustee's claim in a non-jury trial.

The *Granfinanciera* Court distinguished *Katchen* on the ground that in the earlier case the trustee's claim was filed as a counterclaim to the corporate officer's claim against the estate. The *Katchen* decision thus turned "on the bankruptcy court's having 'actual or constructive possession' of the bankruptcy estate, and its power and obligation to consider objections by the trustee in deciding whether to allow claims against the estate." *Granfinanciera*, 109 S.Ct. at 2798 (citations omitted). The *Katchen* trustee's action moved beyond the sphere of private rights because it arose " 'as part of the process of allowance and disallowance of claims' " and became "integral to the restructuring of debtor-creditor relations." *Id*. at 2799. In contrast, the claim at issue in *Granfinanciera* was a private right of action initiated by the trustee against a non-creditor defendant intended "to augment the bankruptcy estate." *Id*. at 2798.

The Third Circuit reached the same conclusion in *Beard*. The trustee had filed a complaint to recover rents and sought a declaratory judgment on defendant's option to purchase a building. Defendant counterclaimed but did not file a proof of claim. The *Beard* court analyzed debtor's claim and defendant's counterclaim according to the principles of *Granfinanciera*. The court focused on *Granfinanciera*'s discussion of public versus private rights and applied that analysis to the claims at issue. The court concluded that the suit involved private rights alone and that the defendant was therefore entitled to a jury trial under the Seventh Amendment.

■ Likewise, application of *Granfinanciera*'s public/private rights analysis to the facts of this case yields the conclusion that Margolis is entitled to a jury trial. Debtor has alleged breach of contract against Margolis. At the time Debtor filed its complaint Margolis was not a creditor. Thus, Debtor's claim did not arise " 'as part of the process of allowance and disallowance of claims,' " nor was it "integral to the restructuring of debtor-creditor relations." *Granfinanciera*, 109 S.Ct. at 2799 (citation omitted). Instead, Debtor sought to augment its estate by bringing a private, state-law claim which exists independently of the public regulatory scheme of bankruptcy.

■ The bankruptcy court ruled that Debtor's claim (1) is a counterclaim and hence a core proceeding, and (2) can therefore be tried in bankruptcy court without a jury. The bankruptcy court erred on both counts. This case differs from *In re Light Foundry Associates*, 112 B.R. 134 (Bankr. E.D.Pa.1990), which the bankruptcy court cited in support of its ruling. In *Light Foundry* the debtor's complaint was filed as a response to the defendant's *pending* proof of claim. The debtor thus lodged a *counter* claim, which qualified as a core proceeding under 28 U.S.C. § 157(b)(2)(C). Here, however, Debtor's complaint was filed almost a year after Margolis' proofs of claim were waived and disallowed as part of a settlement of all claims between Margolis and Debtor. Debtor did not file a counterclaim; it initiated a new suit.[9]

■ In addition, the bankruptcy court erred in concluding that if Debtor's claim is a core proceeding, Margolis' request for a

---

9. Nor does Debtor's claim qualify as a core proceeding under any of the other provisions of § 157(b)(2). As stated in *Beard*, "to the extent that [a] claim is for pre-petition contract damages, it is non-core." *Beard*, 914 F.2d at 443.

jury trial should be denied. The *Granfinanciera* Court made clear that, core or non-core, a debtor's claim had to involve public rights to be triable without a jury.[10] As discussed above, Debtor's claim does not satisfy this determinative criterion. Again, the factual difference between this case and *Light Foundry* is crucial. There, the debtor's claim was responsive to a pending proof of claim and thereby implicated the allowance and/or disallowance of claims against the debtor's estate and the structuring of debtor-creditor relations. The *Light Foundry* debtor's claim invoked a dimension of public rights which is missing from the case here.

## II. MARGOLIS' RIGHT TO WITHDRAWAL OF THE BANKRUPTCY REFERENCE

 Having determined that Margolis is entitled to a jury trial, this court now examines Margolis' motion to withdraw the bankruptcy reference. In *Granfinanciera* the Supreme Court expressly declined to rule whether a jury trial could be conducted in bankruptcy court. *Granfinanciera*, 109 S.Ct. at 2802. Yet in the wake of *Granfinanciera*, the Third Circuit has ruled that 28 U.S.C. § 157(c)(1)[11] is not compatible with the Seventh Amendment's limitation on the review of jury findings.[12] Thus, a bankruptcy court may not preside over a jury trial in non-core matters. *Beard*, 914 F.2d at 442–43. As discussed above, Debtor's claim is a non-core matter, and defendant is entitled to a jury trial. The bankruptcy reference must therefore be withdrawn so that a jury trial can be held in district court. Defendant has shown cause for withdrawal pursuant to 28 U.S.C. § 157(d).[13]

10. *See supra* note 7.

11. 28 U.S.C. § 157(c)(1) provides as follows (emphasis added):
 A bankruptcy judge may hear a proceeding *that is not a core proceeding* but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order

The bankruptcy court's order is accordingly vacated and Margolis' motion for withdrawal of the reference is granted.

or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions *and after reviewing de novo those matters to which any party has timely and specifically objected.*

12. *See supra* note 4.

13. *See supra* note 1.